UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
APR 1 1 2012
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. ) |
| LAVERN CHARLES HESTER, DONALD ROBINSON, and CREVONDA CRAMER, | ) 4:12CR00150JAR ) ) ) |
| Defendants. | ) ) |

## INDICTMENT

### COUNT ONE

The Grand Jury charges that:

**Introduction**

1.  Housing and Urban Development ("HUD") is a department of the Federal government that, among other things, insures loans through agencies such as the Federal Housing Administration ("FHA"). FHA mortgage insurance protects lenders against losses if a property owner defaults on an FHA-insured loan.

2.  At all times relevant, **LAVERN CHARLES HESTER** ("**HESTER**") was employed by HUD as Director of Multifamily in the Saint Louis Field Office. As the Director of Multifamily, Defendant **HESTER** was responsible for approving and overseeing the FHA financing of Multifamily properties in the state of Missouri.

3.  At all times relevant, Defendants **DONALD ROBINSON** and **CREVONDA CRAMER** (formerly known as **CREVONDA ROBINSON** and **CREVONDA CRAMER ROBINSON**) were the owners of single family and multifamily properties within the Eastern

District of Missouri that received FHA insured financing and construction funds, approved by Defendant **HESTER**, for the rehabilitation and management of HUD subsidized properties. At all times relevant to this Indictment, Defendants **DONALD ROBINSON** and **CREVONDA CRAMER** (hereafter referred to as "**CREVONDA ROBINSON**") were married.

4. Defendants **DONALD** and **CREVONDA ROBINSON** secured financing for and ultimately purchased the HUD subsidized multifamily property known as Union Sarah Rehab II ("Union Sarah") located in Saint Louis, Missouri within the Eastern District of Missouri through their company New Beginnings Redevelopment I, LLC ("NBR I"). Defendants **DONALD** and **CREVONDA ROBINSON** were the sole owners of NBR I.

5. Defendants **DONALD** and **CREVONDA ROBINSON** purchased, owned, and operated the HUD subsidized multifamily property known as Chevy Chase Apartments ("Chevy Chase") located in Mexico, Missouri within the Eastern District of Missouri through New Beginnings Redevelopment II, LLC ("NBR II"). Defendants **DONALD** and **CREVONDA ROBINSON** were the sole owners of NBR II.

6. At all times relevant, Defendant **DONALD ROBINSON** was also the sole proprietor of Donald Robinson Realty which did business with HUD, including as general contractor for both the Union Sarah development and Chevy Chase Apartments.

7. Beginning as early as June 25, 2007 and continuing until at least December 12, 2008, the exact dates being unknown to the Grand Jury, within the Eastern District of Missouri and elsewhere,

                          **LAVERN CHARLES HESTER,**
                          **DONALD ROBINSON AND**
                          **CREVONDA ROBINSON,**

defendants herein, did knowingly and willfully combine, conspire, confederate and agree with each other, to commit an offense against the United States; that is, Defendants **DONALD** and **CREVONDA ROBINSON** directly and indirectly gave, offered and promised, and Defendant **HESTER**, a public official, directly and indirectly, demanded, sought, received, accepted and agreed to receive or accept money and other things of value, for or because of official acts performed or to be performed by Defendant **HESTER** with respect to the FHA insured construction and purchase loan for the HUD subsidized low income housing project known as Chevy Chase Apartments in Mexico, Missouri, in violation of Title 18, United States Code, Section 201(c).

## Means and Manner of the Conspiracy

8. It was a part of the conspiracy that Defendant **HESTER** accepted, and in some cases solicited, money from Defendants **DONALD** and **CREVONDA ROBINSON** for his approval and facilitation of a FHA insured refinancing of the mortgage on Chevy Chase ("Chevy Chase loan"). Defendants **DONALD** and **CREVONDA ROBINSON** offered and provided money to Defendant **HESTER** for the facilitation and approval of the same.

9. It was also a part of the conspiracy that Defendant **HESTER** accepted money from Defendants **DONALD** and **CREVONDA ROBINSON** for Defendant **HESTER**'s facilitation of a construction draw from the Chevy Chase loan. Defendants **DONALD** and **CREVONDA ROBINSON** offered and provided money to Defendant **HESTER** for the facilitation of the same.

10. It was part of the conspiracy that Defendants **DONALD** and **CREVONDA ROBINSON**, through their sole proprietorship NBR II, submitted a loan application to Gershman Mortgage ("Gershman") in order to obtain the Chevy Chase loan under the Multifamily Accelerated Process ("MAP"). Gershman could not recommend approval of the Chevy Chase loan under the MAP guidelines. Defendant **HESTER** decided that the Chevy Chase loan application would be underwritten and processed by HUD in-house under his supervision via the rarely used Traditional Application Process ("TAP").

11. During TAP, HUD personnel raised a number of red-flags and objections to Defendant **HESTER** related to the Chevy Chase loan. Certain HUD staff were unwilling to approve and sign certain documents necessary for the Chevy Chase loan to proceed. Defendant **HESTER** directed a Multifamily supervisor, known to the Grand Jury, to require staff performing the TAP analysis to sign the documents necessary for the loan to proceed. Defendant **HESTER** also threatened adverse personnel action against at least one employee for insubordination if she continued to raise objections to the Chevy Chase loan.

12. On or about June 22, 2007, Defendant **HESTER** approved the Chevy Chase loan, the value of which was $1,388,400. The Chevy Chase loan included $822,800 in construction funds ultimately available to Defendants **DONALD** and **CREVONDA ROBINSON** through the designated general contractor for the project, Donald Robinson Realty.

13. On or about June 25, 2007, Defendant **CREVONDA ROBINSON** obtained a Bank of America cashier's check made payable to Defendant **HESTER** in the amount of $15,000. Defendants **DONALD** and **CREVONDA ROBINSON** caused the check to be

provided to Defendant **HESTER**, who thereafter deposited the check into his personal checking account. Defendant **HESTER** spent those funds on personal expenses.

14. On or about July 25, 2007, Defendant **HESTER** signed an amended Chevy Chase loan, increasing the amount of the loan from $1,388,400 to $1,500,200. The amendment also increased the construction funds available to Defendants **DONALD** and **CREVONDA ROBINSON** through the designated general contractor for the project, Donald Robinson Realty, from $822,800 to $980,631.

15. On or about August 1, 2007, Defendant **HESTER** approved and signed a Waiver of Housing Directive which allowed letters of credit to be used in lieu of a cash down payment required by HUD regulations. The Waiver saved Defendants **DONALD** and **CREVONDA ROBINSON** from having to appear at closing with a substantial down payment. Neither Defendants **DONALD** and **CREVONDA ROBINSON** nor any of their businesses had sufficient funds to cover the necessary down payment at closing.

16. Over the course of the project, Defendants **DONALD** and **CREVONDA ROBINSON** submitted Donald Robinson Realty invoices for construction work purportedly performed at Chevy Chase so as to obtain three construction reimbursements, or draws, from the loan funds. Prior to the initial construction draw, Defendant **HESTER** waived the inspection of work performed by HUD staff or independent inspectors that is required before a draw can be paid.

17. On or about August 2, 2007, Defendant **HESTER** approved the initial construction draw and authorized payment to Donald Robinson Reality for the submitted

invoices of work purportedly performed at Chevy Chase without any initial inspection by HUD or independent inspectors.

18. On or about August 3, 2007, Donald Robinson Realty caused to be provided to Defendant **HESTER** a $10,000 Bank of America cashier's check. Defendant **HESTER** thereafter deposited the check into his bank account and spent those funds on personal expenses. Donald Robinson Realty did not have sufficient funds in its accounts to pay Defendant **HESTER** $10,000 until after **HESTER** authorized the August 2, 2007 construction draw and the draw money was wired into Donald Robinson Reality's account.

19. On or about August 10, 2007, Defendant **HESTER** received a $3,000 personal check from Defendants **DONALD** and **CREVONDA ROBINSON**. Defendant **HESTER** deposited the check into his bank account and spent those funds on personal expenses.

20. Some time thereafter, Defendant **HESTER** approached Defendant **CREVONDA ROBINSON** and solicited additional money. Accordingly, on or about December 12, 2008, Defendant **CREVONDA ROBINSON** wired $10,000 from an account that was funded with money from the second construction draw to the personal bank account of Defendant **HESTER**. Defendant **HESTER** used those funds for a down payment on an investment property located at 1050 Theobald in St. Louis, Missouri.

21. In an effort to evade detection and cover-up the fact that he had received payments, Defendant **HESTER** failed to report on his 2008 or 2009 annual Confidential Financial Disclosure Report and supplemental disclosure form that he had received money from Defendants **DONALD** and **CREVONDA ROBINSON** and Donald Robinson Realty.

6

Defendant **HESTER** further failed to report any business relationship with the Defendants **DONALD** and **CREVONDA ROBINSON** or Donald Robinson Realty, including with respect to the investment property located at 1050 Theobald.

**Overt Acts**

22. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Eastern District of Missouri:

A. On or about February 8, 2007, Defendants **DONALD** and **CREVONDA ROBINSON**, through NBR II, submitted a loan application to Gershman in order to obtain the Chevy Chase loan.

B. On or about June 22, 2007, Defendant **HESTER**, in his capacity as Director of Multifamily, approved and signed the Chevy Chase loan in the amount of $1,388,400.

C. On or about June 25, 2007, Defendant **CREVONDA ROBINSON** obtained and caused to be provided to Defendant **HESTER** a Bank of America cashier's check made payable to Defendant **HESTER** in the amount of $15,000.

D. On or about July 25, 2007, Defendant **HESTER**, in his capacity as Director of Multifamily, approved and signed an amended loan for Chevy Chase, increasing the amount of the loan from $1,388,400 to $1,500,200.

E. On or about August 1, 2007, Defendant **HESTER** approved and signed a request for Waiver of Housing Directive which allowed Defendants **DONALD** and **CREVONDA ROBINSON** to use letters of credit in lieu of a cash down payment.

7

   F. On or about August 2, 2007, Defendant **HESTER** approved the initial construction draw and authorized payment to Donald Robinson Reality for the submitted invoices without an initial inspection by HUD or independent inspectors.

   G. On or about August 3, 2007, Defendants **DONALD** and **CREVONDA ROBINSON**, through Donald Robinson Realty, obtained and caused to be provided to Defendant **HESTER** a $10,000 Bank of America cashier's check.

   H. On or about August 10, 2007, Defendants **DONALD** and **CREVONDA ROBINSON** caused to be provided to Defendant **HESTER** a $3,000 personal check from their account made payable to Defendant **HESTER**.

   I.. On or about January 9, 2008, Defendant **HESTER** filed and caused to be filed an annual Confidential Financial Disclosure Report and supplemental disclosure form, OGE Form 450, failing to disclose that he had received money from Defendants **DONALD** and **CREVONDA ROBINSON** and Donald Robinson Realty and that he had a business relationship with the Defendants **DONALD** and **CREVONDA ROBINSON** and Donald Robinson Realty.

   J. Some time thereafter, with the exact date unknown to the Grand Jury, Defendant **HESTER** approached Defendant **CREVONDA ROBINSON** and solicited additional money.

   K. On or about December 12, 2008, Defendant **CREVONDA ROBINSON** caused to be wired $10,000 to the personal bank account of Defendant **HESTER**.

   L. On or about February 2, 2009, Defendant **HESTER** filed and caused to be filed an annual Confidential Financial Disclosure Report and supplemental disclosure form, OGE Form 450, failing to disclose that he had received money from Defendants **DONALD** and

**CREVONDA ROBINSON** and Donald Robinson Realty and that he had a business relationship with the Defendants **DONALD** and **CREVONDA ROBINSON** and Donald Robinson Realty.

All in violation of Title 18, United States Code, Section 371.

### COUNT TWO

The Grand Jury further charges that:

23. Paragraphs 1 through 22 of this Indictment and all subparagraphs thereto are re-alleged and incorporated herein by reference.

24. On or about January 9, 2008 in the Eastern District of Missouri, in a matter within the jurisdiction of the United States Department of Housing and Urban Development,

### LAVERN CHARLES HESTER,

a defendant herein, did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations, knowing the same to be false, fictitious, and fraudulent, to wit: the defendant stated in his annual Confidential Financial Disclosure Report and supplemental disclosure form, OGE Form 450, that he did not receive any income or payments from any person or entity which did or was doing business with HUD; when, as the Defendant well knew, he had received money from Defendants **DONALD** and **CREVONDA ROBINSON** and Defendant **DONALD ROBINSON**'s company Donald Robinson Realty, which owned and managed HUD subsidized multifamily properties.

In violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

### COUNT THREE

The Grand Jury further charges that:

25. Paragraphs 1 through 22 of this Indictment and all subparagraphs thereto are re-alleged and incorporated herein by reference.

26. On or about February 2, 2009 in the Eastern District of Missouri, in a matter within the jurisdiction of the United States Department of Housing and Urban Development,

**LAVERN CHARLES HESTER,**

a defendant herein, did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations, knowing the same to be false, fictitious, and fraudulent, to wit: the defendant stated in his annual Confidential Financial Disclosure Report and supplemental disclosure form, OGE Form 450, that he did not receive any income or payments from, or have a business arrangement with, any person or entity which did or was doing business with HUD; when, as the Defendant well knew, he had received money from Defendant **CREVONDA ROBINSON** and another known to the Grand Jury, both of whom managed HUD subsidized multifamily properties.

In violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT FOUR

The Grand Jury further charges that:

27. Paragraphs 1 through 22 of this Indictment and all subparagraphs thereto are re-alleged and incorporated herein by reference.

28. At all times relevant, Defendants **DONALD** and **CREVONDA ROBINSON** acted as the general contractor during the rehabilitation of Union Sarah. Defendants **DONALD** and **CREVONDA ROBINSON** purportedly contracted out some of the rehabilitation work at Union Sarah to various subcontractors.

29. Defendants **DONALD** and **CREVONDA ROBINSON** received an FHA insured loan for the purchase and rehabilitation of Union Sarah.

30. Beginning on or around August 1, 2007, and continuing through at least October 2007, within the Eastern District of Missouri,

**DONALD ROBINSON, and**
**CREVONDA ROBINSON,**

defendants herein, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud Signet Partners of money and property by material falsehoods and to obtain monies, funds, credits and properties belonging to others and held in escrow by Signet Partners by means of materially false and fraudulent pretenses, representations and promises.

The scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises was carried out in the following manner:

A. In order to obtain construction draws for Union Sarah, Defendants **DONALD** and **CREVONDA ROBINSON** were required to submit to Signet Partners, the escrow agent for HUD, proof of payments made to subcontractors along with invoices and lien waivers.

B. On or about August 1, 2007, Defendants **DONALD** and **CREVONDA ROBINSON**, through their company NBR I, submitted a construction draw request to Signet Partners along with purported supporting documentation, including invoices, lien waivers, and copies of cashier's checks.

C. Defendants **DONALD** and **CREVONDA ROBINSON** submitted to Signet Partners for reimbursement an invoice from "Handy Ed" in the amount of $23,958 for

11

concrete and asphalt work purportedly done on June 21, 2007. Submitted with the "Handy Ed" invoice was a cashier's check in the amount of $15,000 purportedly issued by Defendants **DONALD** and **CREVONDA ROBINSON** to "Handy Ed" to satisfy this invoice. In fact, the cashier's check purportedly paid to satisfy the invoice was actually an altered version of the check provided to and cashed by Defendant **HESTER**.

D. Defendants **DONALD** and **CREVONDA ROBINSON** submitted to Signet Partners for reimbursement an invoice from "Brown Construction" in the amount of $13,000 for painting and flooring work purportedly done on May 22, 2007. However, the invoices and lien waivers purportedly submitted to Defendants **DONALD** and **CREVONDA ROBINSON** by "Brown Construction" were actually created by Defendants **DONALD** and **CREVONDA ROBINSON**, "Brown Construction" is not a real company and performed no work at Union Sarah, and the cashier's check purportedly paid to "Brown Construction" was actually provided to a person known to the Grand Jury to be used for a down payment on a property owned by Defendants **DONALD** and **CREVONDA ROBINSON**.

E. Due in part on these fraudulent representations, Signet Partners mailed a reimbursement check in the amount of $77,190.38 to Defendant **CREVONDA ROBINSON** made payable to NBR I and Donald Robinson Realty. This check represented a total reimbursement for rehabilitation work legitimately completed as well as for purported work backed by the aforementioned fraudulent representations.

31. Signet Partners would not have made certain construction disbursements had it known about Defendants **DONALD** and **CREVONDA ROBINSON**'s aforementioned material misrepresentations.

12

32. Defendants **DONALD** and **CREVONDA ROBINSON**'s scheme caused financial losses in excess of $28,000.

33. On or about October 17, 2007, in the Eastern District of Missouri,

**DONALD ROBINSON, and**
**CREVONDA ROBINSON,**

defendants herein, for the purpose of executing the aforesaid scheme and artifice to defraud, and in attempting to do so, did knowingly and willfully caused to be delivered by a private and commercial interstate carrier according to the directions thereon, an item sent by Signet Partners to Defendants **DONALD** and **CREVONDA ROBINSON** containing a check in the amount of $77,190.38 made payable to NBR I and Donald Robinson Realty, said item being addressed to and sent to Crevonda Cramer Robinson, Chevy Chase Apartments, 1224 W. Breckenridge Dr. Apt 12, Mexico, Missouri 65265.

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FIVE

The Grand Jury further charges that:

34. Paragraphs 1 through 22 of this Indictment and all subparagraphs thereto are re-alleged and incorporated herein by reference.

35. On or about August 16, 2011 in the Eastern District of Missouri, in a matter within the jurisdiction of the United States Department of Housing and Urban Development,

**DONALD ROBINSON,**

a defendant herein, did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations, knowing the same to be false, fictitious,

and fraudulent, to wit: Defendant submitted a certified HUD Housing Assistance Payment form that included as a current tenant in the Chevy Chase Apartments a person referred to herein as S. A. and requested S. A.'s Section 8 Housing Assistance Payment for that month, when, as the Defendant well knew, S. A. did not reside at Chevy Chase Apartments at the time and had not resided at Chevy Chase Apartments for several months.

In violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
Stephen Casey, #58879MO
Assistant United States Attorney